IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN HALLE, | CIVIL ACTION |
| Plaintiff, | |
| | No. 13-CV-1449 |
| v. | |
| WEST PENN ALLEGHENY HEALTH SYSTEM, INC., et al. | **Electronically Filed** |
| Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION FOR SANCTIONS</u>

Defendants West Penn Allegheny Health System, Inc., Highmark Inc., Allegheny Health Network, and John Lasky (all together, "defendants"), respectfully submit this memorandum in support of their Rule 11 motion for sanctions against plaintiff Steven Halle ("plaintiff Halle") and his counsel.

**I.      INTRODUCTION**

Mindful that Rule 11 should be invoked judiciously and sparingly, defendants move for sanctions against plaintiff Halle and his counsel, Thomas & Solomon, for bringing a duplicative collective action.

Plaintiff Halle seeks certification of an automatic meal break deduction collective action that is for all intents and purposes identical to the collective action Judge Ambrose decertified in <u>Kuznyetsov v. West Penn Allegheny Health System, Inc.</u>, Nos. 09-379 and 10-379 (W.D. Pa. 2009 and 2010) ("<u>Kuznyetsov</u>"), in which he participated as an opt-in plaintiff. The entirety of plaintiff Halle's employment experience is subsumed within the time period Judge Ambrose already reviewed and determined was inappropriate for collective treatment. Plaintiff Halle has not pointed to nor can he point to any facts or any legal theory in support of collective

action certification that were not fully and fairly litigated by his current counsel, on his behalf, before Judge Ambrose. Thus, plaintiff Halle's collective action claim is not warranted by existing law or fact, and will unnecessarily deplete defendants' and this Court's resources.

Accordingly, this Court should sanction plaintiff Halle and his counsel.

## II.   BACKGROUND

### A.   Judge Ambrose Decertifies the Kuznyetsov Action Filed by Thomas & Solomon.

On April 1, 2009, the law firm of Thomas & Solomon filed an action in this Court raising a claim under the FLSA, based upon allegations that West Penn failed to compensate its non-exempt employees for work performed during their meal breaks. [Kuznyetsov, No. 09-379, Dkt. # 1, attached as Exhibit A, and # 324, attached as Exhibit B.][1] Within a few weeks, the Kuznyetsov plaintiffs filed more than 250 opt-in consent forms. In response to this flood of forms, Judge Ambrose ordered Thomas & Solomon "to immediately cease and desist any form of notification not pre-approved by the court." Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 09-379, 2009 U.S. Dist. LEXIS 47163, at *19 (W.D. Pa. June 1, 2009).

One of those consent forms was signed by plaintiff Halle on October 30, 2008, and filed by the Kuznyetsov plaintiffs on April 2, 2009, nearly a year and a half after plaintiff Halle last worked at The Western Pennsylvania Hospital. (Plaintiff Halle's "Consent to Become a Party Plaintiff" Form, attached as Exhibit C; see Am. Compl. ¶ 115 (alleging plaintiff Halle's termination of employment as "approximately December 1, 2007").)

---

[1]   Judge Ambrose consolidated Civil Action No. 09-379 with a subsequent related action the Kuznyetsov plaintiffs filed asserting a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), based on the same alleged facts. The case became docketed as Kuznyetsov v. West Penn Allegheny Health System, Inc., No. 10-948. For additional procedural history, defendants refer this Court to their Memorandum of Law in Support of their Motion to Dismiss the Collective Action Allegations in the Amended Complaint. [Dkt. # 46].

On June 1, 2009, Judge Ambrose conditionally certified the <u>Kuznyetsov</u> collective action. See <u>Kuznyetsov</u>, 2009 U.S. Dist. LEXIS 47163, at *4. The putative class consisted of "all current and former hourly employees of Defendants who were subject to the automatic pay deduction." <u>Id.</u> at *2. Ultimately, approximately 14,800 current and former employees received notice, but only about 820 joined the lawsuit. <u>Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.</u>, No. 10-948, 2011 U.S. Dist. LEXIS 146056, at *6 (W.D. Pa. Dec. 20, 2011).

On December 20, 2011, Judge Ambrose decertified the collective action. <u>Id.</u> at *15-30. She found that the <u>Kuznyetsov</u> named and opt-in plaintiffs were not similarly situated for the following reasons:

- With regard to the plaintiffs' factual and employment settings, Judge Ambrose assessed the significant differences in job duties, <u>id.</u> at *15-19, the vast facilities and department variances, <u>id.</u> at *20-21, and the numerous means by which 312 supervisors implemented West Penn's meal break policy, <u>id.</u> at *21-22. She concluded that "[t]he record shows an extremely wide variety of factual and employment settings among the individual Plaintiffs, the supervisors vary with almost each Plaintiff and, thus, the application of the cancelation process for each Plaintiff varied from day to day, from department to department, from facility to facility." <u>Id.</u> at *29-30.

- Considering the various defenses available to West Penn, Judge Ambrose explained that, to determine whether West Penn had defenses to the <u>Kuznyetsov</u> opt-in plaintiffs' claims, it would be necessary to consider individualized facts and testimony, <u>id.</u> at *23-25, and thus, "[t]he defenses to which Defendants point are unique to specific Plaintiffs," <u>id.</u> at *26.

- Addressing fairness and procedural considerations, Judge Ambrose expressed "great reservations" about trying the case with representative testimony, <u>id.</u> at *28, because the <u>Kuznyetsov</u> plaintiffs had provided "no meaningful explanation" of how the case could be tried in a collective manner, <u>id.</u> at *29. Inevitably, a collective action would deteriorate into "over 800 mini trials" and would "unlikely . . . promote orderly and sensible case management." <u>Id.</u>

B. **<u>Thomas & Solomon Seeks Appellate Review of the Decertification Decision.</u>**

On February 28, 2012, the <u>Kuznyetsov</u> plaintiffs filed a Motion for Voluntary Dismissal with Prejudice "for Purposes of Appeal" pursuant to Fed. R. Civ. P. 41(a)(2).

[Kuznyetsov, No. 10-948, Dkt. # 145.] West Penn did not oppose the motion, which Judge Ambrose granted on February 29, 2012. In so doing, Judge Ambrose also dismissed the claims of the over 800 Kuznyetsov opt-in plaintiffs, including plaintiff Halle's claim, without prejudice. [Kuznyetsov, No. 10-948, Dkt. # 146.]

On March 29, 2012, plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. [Kuznyetsov, No. 10-948, Dkt. # 148.] The only issue the Kuznyetsov plaintiffs raised in their appeal was whether Judge Ambrose erred in decertifying their FLSA collective action claim.

On September 4, 2013, the Third Circuit dismissed the appeal for lack of jurisdiction, holding that the voluntary dismissal with prejudice in Kuznyetsov was not a final order appealable under 28 U.S.C. § 1291. See Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242-47 (3d Cir. 2013).[2] The Third Circuit agreed with West Penn that the Kuznyetsov plaintiffs' voluntary dismissal of their claims was an impermissible strategy to manufacture finality contrary to the policy against piecemeal litigation. See Camesi, 729 F.3d at 245 ("Appellees urge that Appellants' voluntary dismissals of their claims constitute impermissible attempts to manufacture finality under Sullivan. We agree.").

### C. Thomas & Solomon Files a Duplicative Collective Action.

On October 14, 2013, Thomas & Solomon filed a collective action lawsuit on behalf of plaintiff Halle and other "similarly situated" employees against the named defendants. [Dkt. # 1 at ¶ 1.] In response to defendants' motion to dismiss, on May 5, 2014, plaintiff Halle filed an Amended Complaint, which removed several of the originally named defendants. Plaintiff Halle's collective action claim, however, remained intact.

---

[2] The case name reflects the Third Circuit's consolidation of a procedurally-identical appeal in a case against UPMC, a case over which this Court presided.

Plaintiff Halle alleges that his termination of employment occurred on "approximately December 1, 2007" (Am. Compl. ¶ 115), placing the window of his claim as April 2, 2006 to December 1, 2007.[3]  Such a period of potential recovery falls entirely within the time period assessed by Judge Ambrose in <u>Kuznyetsov</u> (April 1, 2006 (three years reaching back from the April 1, 2009 filing of the <u>Kuznyetsov</u> complaint) through December 11, 2011 (the date of Judge Ambrose's decertification decision)).

Plaintiff Halle identifies the putative collective action members as "current or former employees who were not fully compensated for all time they worked during their unpaid meal periods[.]"  (<u>Id.</u> at ¶ 4.)  He claims these members worked in workweeks in which

   a.  the defendants suffered or permitted the employee to work more than 40 hours;

   b.  the employee was subject to the defendants' policy to suffer or permit employees to work during their unpaid meal periods;

   c.  the employee was subject to the defendants' policy to deduct time from the employee's pay for the meal period; and

   d.  the employee was subject to the defendants' policy to not pay for the time that they permitted the employee to work during their unpaid meal period unless the employee self-reported working that time.

(<u>Id.</u>)  The challenged meal break deduction policy is further described in paragraphs 123 – 138 of the Amended Complaint.  (<u>Id.</u> at ¶¶ 123-38.)  Although worded slightly differently, this definition is the same as the collective action definition in <u>Kuznyetsov</u>:  "Plaintiffs and Class Members subject to the Meal Break Deduction Policy[.]"  [Ex. A, <u>Kuznyetsov</u>, No. 09-379, Dkt.

---

[3]  Plaintiff Halle filed his consent to opt into the <u>Kuznyetsov</u> action on April 2, 2009.  (Ex. C.)  The statute of limitations has been tolled from that time to when he filed the complaint in this action on October 4, 2013.  [Dkt. # 1 at ¶ 183.]  The April 2, 2006 to December 1, 2007 window is determined by accepting the alleged tolling period and applying it to a potential three-year statute of limitations.  <u>See</u> 29 U.S.C. § 255(a).

## 1 at ¶¶ 79, 98 and 324 at ¶¶ 74, 98.]  See also Kuznyetsov, 2011 U.S. Dist. LEXIS 146056, at *5-6 (E.D. Pa. Dec. 20, 2011) (describing meal break claim policy).

### D. Thomas & Solomon Continues Its Practice of Submitting Consent Forms to the Court.

Thomas & Solomon has renewed its practice of filing opt-in consent forms in advance of receiving from the Court "conditional certification" and authorization to send a court approved notice.[4]  To date, plaintiff Halle's counsel has submitted 252 of those forms to this Court.[5]

## III. ARGUMENT

### E. Legal Standard

Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation equivalent of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus., 788 F.2d 151, 157 (3d Cir. 1986).  It requires that an attorney who submits a complaint "certify that it is not asserted for improper purposes, such as delay or

---

[4]  No doubt the firm received the signatures from former Kuznyetsov opt-in plaintiffs in response to a solicitation similar to the one sent out in the Belle action (the UPMC version of Halle), which glossed over the Third Circuit's dismissal of the appeal due to manufactured finality with the following statement:  "Due to a recent ruling by the Federal Appeals Court we need your permission to continue to pursue your claims in Federal Court."  (Sept. 10, 2013 "UPMC Unpaid Wages Lawsuit" Letter, attached as Exhibit D.)

[5]  Two hundred and four of the opt-in forms filed in this case (over eighty percent) were signed by individuals who opted into Kuznyetsov, including six out of the eighteen deposed and whose testimony Judge Ambrose relied upon to decertify that collective action:  Pippa Bowey, Phillip Conyers, Alexander Fleming, Daniel Gordon, Reid Hoyson, and William Rogers.  (Consent Forms, attached as Exhibit E); Kuznyetsov, 2011 U.S. Dist. LEXIS 146056, at *7 n.1.  Another form was signed by an opt-in plaintiff, Darlene Denise Seiling, whose claim had been dismissed by Judge Ambrose on summary judgment.  See Kuznyetsov, No. 09-379, 2010 U.S. Dist. LEXIS 102889, at *9-10 (W.D. Pa. Sept. 28, 2010).  West Penn noted this fact in the draft of this motion served on plaintiff Halle's counsel pursuant to Federal Rule of Civil Procedure 11(c).  Shortly thereafter, on June 6, 2014, Ms. Seiling filed a notice of voluntary dismissal of her claim in this case.  [Dkt. # 48.]

harassment, and that there is a reasonable basis in fact and law for the claims made." Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002) (citation omitted).[6] The legal standard for evaluating conduct alleged to violate Rule 11 is "reasonableness under the circumstances, with reasonableness defined as an objective knowledge or belief at the time of the filing . . . that the claim was well-grounded in law and fact." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991); see Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 299 (3d Cir. 1996) (Rule 11 imposes a duty of reasonable inquiry into the facts and the law); Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995) (same).

To comply with the "reasonableness under the circumstances" standard, an attorney must "'conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'" Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994) (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988)). In determining whether a party's actions were reasonable under the circumstances, the court should consider "such factors as how much time for investigation was available to the signer [and] whether he had to rely on a client for information as to the facts underlying the pleading, motion

---

[6] The text of Rule 11 requires an attorney who presents a pleading, motion or other paper to the court conduct a reasonable inquiry to ensure that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).

or other paper." <u>CTC Imports & Exports v. Nigerian Petroleum Corp.</u>, 951 F.2d 573, 578 (3d Cir. 1991) (quotation omitted).

Pursuant to the safe harbor provision of Rule 11(c), defendants served by first class mail and e-mail a copy of their motion and this accompanying memorandum of law on May 16, 2014, and requested that plaintiff Halle formally withdraw the collective action claim in his Amended Complaint. (Letter dated May 16, 2014 to Thomas & Solomon, attached as Exhibit F.) Plaintiff Halle refused to do so. (Letter dated June 6, 2014, attached as Exhibit G.)

### F. The Collective Action Claim Renewed By Plaintiff Halle and Thomas & Solomon Is Unwarranted by Existing Law and Facts.

As reflected above and outlined in defendants' Memorandum in Support of their Motion to Dismiss the Collective Action Claim in the Amended Complaint, plaintiff Halle, a former <u>Kuznyetsov</u> opt-in plaintiff, is collaterally estopped from bringing this collective action. [Dkt. # 46 at 11-15.] Under no set of circumstances are the instant collective action allegations warranted by the applicable existing law that Thomas & Solomon itself established. <u>See</u> <u>Dunleavy v. Gannon</u>, No. 11-361, 2012 U.S. Dist. LEXIS 9679, at *21-24 (D.N.J. Jan. 26, 2012) (granting motions for sanctions under Rule 11 against pro se plaintiff due to duplicative pleadings and claims collaterally estopped by litigation of the same issues in a state court case); <u>Kaplan v. Burrows</u>, No. 10-95, 2011 U.S. Dist. LEXIS 125653, at *18-23 (M.D. Fla. Sept. 6, 2011) (recommending sanctions sought by an individual corporate officer defendant against plaintiff and his two attorneys for asserting a legal theory in a suit for unpaid compensation and retaliation under the FLSA that had no reasonable chance of success due to default judgment granted in state case and prior federal ruling on summary judgment finding res judicata on compensation issue), <u>aff'd</u> <u>in</u> <u>part</u>, <u>Kaplan v. Burrows</u>, No. 10-95, 2011 U.S. Dist. LEXIS 125654 (M.D. Fla. Oct. 31, 2011) (adopting recommendation of sanctions against plaintiff and one of his attorneys).

It defies logic to assert that collective action treatment is plausible in this case – the time period applicable to plaintiff Halle's claim falls squarely within the time period Judge Ambrose considered in Kuznyetsov and the theory plaintiff Halle recites is the same one Judge Ambrose rejected as a basis for collective action treatment in Kuznyetsov.

Nor could any reasonable inquiry under the circumstances present here uncover facts within plaintiff Halle's specific working environment to contradict Judge Ambrose's finding that the overall "decentralized nature of the application of the manner to cancel an automatic deduction" and the "independent way that each supervisor implemented" the policy foreclosed collective action treatment. Kuznyetsov, 2011 U.S. Dist. LEXIS 146056, at *27-28. Judge Ambrose's decision clearly was not confined to one location, but more universally across 142 different locations, 1,174 different departments, and 312 different supervisors – the same system-wide approach taken by plaintiff Halle here. Id. at *6, 20-21. Judge Ambrose's emphasis on differences not just throughout the health system but present in every location and even every department and her "great reservations" about them, id. at *28, makes it unreasonable for plaintiff Halle and his attorneys to believe that there now exists a group of opt-in plaintiffs who could be considered similarly situated to him with respect to the very same meal break deduction claim considered and rejected for collective action treatment in Kuznyetsov.[7]

Whether a complaint is filed for an improper purpose is "tested by objective standards." Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 n.9 (9th Cir. 1986). An improper purpose is one "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. Proc. 11(b)(1). Courts have repeatedly held that "[w]ithout question,

---

[7] Judge Ambrose describes these differences using the following terms: "substantial diversity," id. at *20, "vast . . . variances," id. at *21, "exponentially compounds the differences," id. at *22, "significant individualized defenses," id. at *23, "inherently individualized," id. at *25, "significant manageability problems," id. at *28, and "extremely wide variety of factual and employment settings," id. at *29.

successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." Zaldivar, 780 F.2d at 832; G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1110 (9th Cir. 2003) (affirming district court's grant of Rule 11(b)(1) sanctions based, in part, on improper purpose grounds because plaintiffs had "filed successive motions based on propositions of law clearly rejected by the Court.") (quotation omitted); Knipe v. Skinner, 19 F.3d 72, 77 (2d Cir. 1994) (affirming district court decision to impose sanctions because arguments asserted in new complaint filed four days after court rejected those arguments in complaint raising same factual allegations improper); Banks v. Schutter, No. 08-2677, 2009 U.S. Dist. LEXIS 2938, at *9-11 (E.D. Pa. Jan. 15, 2009) (finding Rule 11 violation for separate actions involving same subject matter in same court against same defendant); Kirschner v. Zoning Bd. of Appeals of the Incorporated Village of Valley Stream, 159 F.R.D. 391, 397-98 (E.D.N.Y. 1995) (granting motion for sanctions for plaintiffs filing a third amended complaint that merely repeated the improperly pleaded allegations in the second amended complaint).

Plaintiff Halle and Thomas & Solomon needed to have a legal and factual basis before asserting collective action allegations. They possessed neither. Sanctions thus are warranted against plaintiff Halle and Thomas & Solomon for regurgitating a legal theory that has been fully and fairly litigated and rejected.[8]

---

[8]   Defendants appreciate that their motion for sanctions must be assessed on the pleading at issue. For the reasons detailed above, the request for sanctions stands on its own and should be granted. The broader context of Thomas & Solomon's pleading and litigation tactics, however, merits consideration. For example:

- The Third Circuit noted Thomas & Solomon's manufacture of finality in attempt to "short-circuit" the rules governing appeals of interlocutory orders. Camesi, 729 F.3d at 245;

- The Third Circuit noted Thomas & Solomon's use of a "procedural sleight-of-hand" to bring about finality. Id.;

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant their motion, impose sanctions pursuant to Rule 11 upon plaintiff Halle and Thomas & Solomon, and award any other relief that this Court deems just and proper.

Respectfully submitted,

Dated: June 12, 2014

/s/ David S. Fryman
David S. Fryman (PA57623)
Alexandra Bak-Boychuk (PA204414)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8137
frymand@ballardspahr.com
bakboychuka@ballardspahr.com

*Attorneys for Defendants*

---

- This Court wrote that Thomas & Solomon's approach "smacks of sandbagging." Camesi v. Univ. of Pittsburgh Med. Ctr., 2011 U.S. Dist. LEXIS 146067, at *20 (W.D. Pa. Dec. 20, 2011); and

- A District Judge in Massachusetts cautioned Thomas & Solomon that "[l]itigation is not a game." Manning v. Boston Med. Ctr., Corp., No. 09-11463, 2012 U.S. Dist. LEXIS 54692, at *24-25 (D. Mass. April 18, 2012).

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing Motion for Sanctions Pursuant to Rule 11 and accompanying Memorandum of Law has been served upon counsel of record by this Court's ECF system, this 12th day of June, 2014, addressed as follows:

J. Nelson Thomas, Esq.<br>
nthomas@theemploymentattorneys.com

          /s/ David S. Fryman
          David S. Fryman
          Counsel for Defendants